Good morning, your honors. May it please the court, my name is Michael Droke, appearing on behalf of the plan in the case brought by Francine Schneves. Just because this docket has been a day of marital benefit plans, to clarify which this one is, this is a case in which the U.S. Bancorp plan administrator made an actuarially neutral decision. In other words, they paid the same amount, you know, based on actuarial statistics either way, as to who would be the surviving spouse on retirement or at retirement under the terms of the plan. As a result of that decision, Mr. Schneves was awarded a little over a quarter million dollars a year, half of which pursuant to a divorce court action, not really presently before this court, but half of which has been transmitted to Francine Schneves since 2004 upon Bob Schneves' 55th birthday. I'm going to refer to the parties by their first name because there are several of them. It makes it a lot more straightforward. So in this case, your honors, the question that's pending now before this court was raised as well by Francine to the plan administrator before the conclusion of the divorce proceedings and before Bob's 55th birthday. And that question was, including in the demand letter citing the Richardson case, which has been briefed heavily on both sides, contending that the plain meaning of the word retirement should constitute a voluntary termination. The plan administrator understood that that was the contention of Francine, analyzed the plan in entirety in the context of the plan and in the context of the way that the term retirement was used throughout the plan, and reached a determination that contrary to the definition that was proposed by Francine, that the way that it had been consistently applied was that retirement meant the commencement of benefits, typically at a normal retirement age under the plan. And what that meant is that there was a kind of confluence of things that would happen in order for retirement to occur, that there be a separation of employment and that there be the attainment of the age of retirement, and that was the point at which things become fixed under the plan. Important things like how much compensation would be determined monthly, who's eligible, whether the person's eligible or not, and the like. In doing that, the plan administrator analyzed the very provisions that were later reviewed by the district court, and it's the plan's contention that the district court's determination was in error. And to clarify, it's the plan's contention that the district court properly identified the standard of review, namely an abusive discretion standard should apply, but that in analyzing the plan and in the context of the very thorough seven-page analysis issued by the plan administrator, interpreted it in such a way as to apply its own judgment rather than the plan administrator's, contrary to that standard of review. The factual underpinning of the plan is pretty straightforward. In most respects, it's a supplemental benefit plan. In other words, it's in addition to other forms of compensation. And the plan at issue is a retirement provision. It allows somebody to become eligible to have certain types of benefits upon attainment of a certain age. The plan took that into account in analyzing its decision and reconciling the use of the word retirement not in the kind of narrow way that was identified by the district court, but rather as it was used throughout the plan. So explaining why the district court was in error in reaching its conclusion, I think it's one of the critical issues that the district court did was to take the word retirement and, first of all, exclude any time that that word was used in concert with any other word. So, in other words, the district court implicitly conceded that the concept of voluntary termination would be one that wouldn't work if you talked about an early retirement benefit. You know, early voluntary termination benefit, what's that supposed to mean? And so they took all of the many uses of the language out of its interpretation of the plan. Second, and I think critical to the district court's analysis in an issue of error in application of the standard, they made the determination that the interpretation identified by the plan administrator would render a provision nugatory. And in reaching that conclusion, the district court used carefully ellipses to carve out key sections of the language at issue. In fact, if you review the district court's order, the paragraph that they say is rendered nugatory by the plan's interpretation is about one inch long. It's at page five of their opinion, ER 15. Whereas the actual language on page ER 74 is a half a page long. Now, why is that important? First, this was not a provision unknown to the plan administrator in reaching its own determination. In fact, in the denial letter itself on page ER 53, the provision that the district court believed would be rendered nugatory by the plan's determination was literally the first section reviewed by the plan or discussed specifically by the plan in rendering its interpretation. And so the plan itself explains right in the middle of page three of its determination letter why its interpretation of the section at issue, or the section ultimately the district court took umbrage with, that their interpretation was a reasonable one, and in fact was the most reasonable interpretation of that section. That conclusion, Your Honors, is borne out by the language of that section of the plan itself. Namely, that this is a section which states in the first clause, essentially when one is eligible for benefits, in other words, upon retirement at or after a designated age, then they shall receive a monthly benefit equal to. And the court then uses ellipses, as does the appellee, to eliminate the remaining subparagraphs of that section, which make it clear that the intent of this section is that when one is eligible for benefits, if the benefit happens at a certain time, then the amount that is received is different. In other words, this is no different than any other provision that would limit the total amount of benefit upon commencement of benefits. So in other words, as a matter of just purely understanding the language of the plan, the district court got it wrong, and it is thusly reversible error. But more importantly, the question is, who's to make that determination? And this is a plan, again, the district court reviewing that plan under an abusive discretion standard. It's to the plan to make the determination to explain how the terms are used in the context of the plan as a whole. This court has recognized, including in the Richardson case that was briefed by each party, that interpretation of the language needs to happen in the context of a plan as a whole. This is not a voluntary termination benefit plan. This is not a if-you-decide-to-quit-your-job-and-start-up-a-competing-bank plan. This is not a severance pay plan. This is a retirement plan. And the plan administrator engaged in and made a reasonable determination of what the language of retirement means in the context of the plan, and in doing so carefully reconciled all of the various provisions in the plan itself and the many ways in which that term is used throughout the course of the plan. The Ninth Circuit case law makes clear the standard, and that is that a plan's determination is to be overturned only when there is a determination that's issued without explanation that construes the plan in a way that conflicts with the terms of the plan in its plain language or relies on erroneous findings of fact. Clearly, numbers one or three do not apply. Neither party contends they do. The only issue is the plan's determination that retirement means the commencement of benefits at a normal retirement age under the plan, not the separation of employment if that happens earlier. Is that a reasonable interpretation? And specifically, is it an interpretation which construes the plan and does not conflict with the plain language of the plan? So the plan's contention is clear and straightforward, that the plan was reasonably construed by the plan administrator, that that determination is entitled to deference. The court got it right on the standard of proof but ultimately got it wrong on its analysis of that standard of proof, which is clear by a review of the provisions that are purportedly rendered negatory. So that being said, if Your Honors have no additional questions, I'll reserve additional time for rebuttal. Okay. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Janice Proctor-Murphy with the law firm of Benamor-Craig, representing appellee Francine Snavice. When a plan administrator interprets an undefined term contrary to its plain meaning, advances an interpretation that renders a portion of the plan negatory and uses that term inconsistently throughout the plan, that interpretation is unreasonable or an abuse of discretion. Regardless of the standard of review applied, the administrator's interpretation cannot stand. In this case, Your Honor, Francine's interpretation of the plan provision at issue uses a plain and ordinary meaning of the definition of retirement. Did Robert retire at age 53? Yes, Your Honor. He kept working, didn't he? Your Honor, under an ordinary definition, and let me be the first to concede, there are several definitions of retirement. That's the problem. I mean, the district court accepted as a premise that there is a plain meaning of retirement, and because the plan didn't use the defined plain meaning of retirement, she found the plan administrator's interpretation unreasonable. But that is based on a premise that there is a plain meaning of retirement, and I just don't understand that. Retirement is used to mean lots of different things. Your Honor, as with many words, the word has several different meanings, all of which are plain and ordinary meanings of that term. Why is the district court entitled to say that the meaning that she picked is the one that the plan administrator has to use? Because in this case, Your Honor, the plan administrator used a definition that was wholly unrelated to the plain definition of retirement. This court can search reference materials, dictionaries. There is no definition of the term retirement that means commencement of benefits, and that's exactly what they attempted to do here is bootstrap a concept of benefits. Benefits does not mean retirement. Retirement does mean a withdrawal from one's position. And in this case, if the plan wanted to say, well, we will have beneficiary designation start with the annuity starting date, it could have easily done so. It used the word retirement. A plain meaning of the term retirement is to withdraw from one's position. In this case, there is no definition of retirement that encompasses a concept of benefits. And it has to do with people working and then retiring and getting benefits. If this was the word retirement in some thesis about old age, then you might say, well, we'll have to look and see what that means. But retirement is sort of the central piece of a retirement plan. Correct, Your Honor. The central piece is getting the money. I mean, if you don't get the money, what's the point? I apologize for stepping over you, Judge Brennan. In this case, Your Honor, in terms of why there should be deference here, one of the reasons is the plan administrator said, we consistently use retirement to mean commencement of benefits at a certain age. But as we pointed out repeatedly in our answering brief, that is not the case. There are clearly times in this plan document in which retirement does mean termination of employment. There is no serious dispute as to that. And if that's the case, then why should not the plain meaning be used in conjunction with this provision? Can you give me one of those places? Absolutely, Your Honor. If Your Honors will look at 6.1.1A, it references in Exhibit A to the plan. I believe it's at ER 72, which my notes say, the first section of A1 of Exhibit A states in part, upon retirement at normal retirement date, a participant is entitled to receive a monthly benefit. Well, if you use their definition, upon commencement of benefits at normal retirement age date, a participant is entitled to receive a monthly benefit. It's circular. However, if you use that definition. That's where the plan uses the phrase retirement or termination of employment. And if you want to use or define retirement as the termination of employment, that makes that phrase upon a participant's termination of employment or termination of employment. That's circular. Your Honor, that's one argument. Another argument would be that there could be a difference between voluntary termination of employment and other types of termination of employment. And there are situations in which, for example, the compensation committee needs to approve certain types of employment or termination in order for someone to receive benefits. And so in that case, I believe it would be entirely appropriate to use those terms would be consistent. But the problem that we have here, Your Honor, is the plan administrator's rationale. All three explanations given are demonstrably without merit. Their first explanation for why they did what they did is this term is used consistently. Well, we've already demonstrated to the court that's not true. They also say, well, we look at the plain meaning of the term itself. And in that case, again, Your Honor, I don't believe that to be true. If you look at any definition of the term retirement, there's no reference in any way, shape, or form to benefits. There is, however, repeated references to withdraw or leaving a position. That is a common and ordinary definition. Now, again, I'm seeing skepticism. In the pension plan world, where the actuarial calculations are made as of a certain time, I'm not sure that commencement of benefits is an illogical choice. I mean, that's the key moment. That's when things get locked in. That's when certain rights get locked in under ERISA. And that may well be, Judge Clifton, but then they should have used annuity starting date. But they opted to use the term retirement. And the Ninth Circuit case law says that when an ERISA term is undefined, we look to the plain meaning of that term. And in this case, the plain meaning of that term is? Well, that circles back to what I said before, which is the premise of the district court's decision is accepting one definition as the plain meaning of the term, a term which you've acknowledged has multiple meanings. Right, Your Honor. But the problem is their definition that they are proposing is not a plain meaning of that term. I guess that's the issue. And I'm saying in the context of a pension plan, I'm not so sure. I mean, as Judge Brunetti just asked, if you're concerned about retirement benefits, then you're concerned about when you get the money.  That's the trigger. Your Honor, again, if they had wanted to use that, and qualified plans commonly use the term that you can have beneficiary designation at the annuity starting date. They don't use the term retirement. And in this case, retirement, there is no definition that means benefits. And what they're attempting to do is read a term into the plan. And I don't believe that they're permitted to do that. In this case, Your Honor, all three explanations given by the administrator for their interpretation of the word retirement, as I mentioned previously, cannot stand. The administrator used, one, that they used it consistently. We've shown that explanation is demonstrably untrue. Two, even the plan concedes that our definition is a common meaning of the term retirement. And you can look at page 30 of their opening brief and page 9 of their reply brief. Repeatedly, those dictionary definitions encompass the meaning of retirement that means termination of employment. Although the plan has the discretion to interpret the term, it cannot redefine it. Instead, since the plan chose to use retirement, and it chose not to define that term, this court should refer to the ordinary and plain meaning as the district court did. In addition, Your Honor, their interpretation, we believe, renders the provision nugatory. And in that case, their plan and their meaning should not be allowed to stand. Now, when all three of the reasons given by the plan administrator can't withstand scrutiny, Ninth Circuit precedent says we look to a plain and ordinary meaning of that term. In this case, that is precisely what the district court did. The district court looked at the term retirement, said that the plan administrator's interpretation both rendered it nugatory, was not a plain meaning, and was not used consistently. Therefore, given that Francine's definition is a common meaning, does not render a provision nugatory, then that term should be used. Now, I understand the court is concerned in terms of retirement doesn't make sense to have that defined at age 55 or whenever Robert begins the commencement of benefits. But again, Your Honor, in this case, the plan is the one that chose the meaning of the term, what term it would use, and it used the term retirement. In those circumstances, we believe the judgment of the district court should be affirmed. Finally, in the reply brief, the plan administrator makes the argument that ambiguity, all that Francine has demonstrated, is that the term is ambiguous. It's important to note, Your Honors, that the plan administrator did not deny Francine's claim on the basis of ambiguity. In fact, the plan administrator said this term, it's not ambiguous. We consistently find that it means commencement of benefits at a certain age. While the plan administrator has the authority to interpret a term, Ninth Circuit precedent is clear that it doesn't have the authority to redefine it. In this case, we believe that's exactly what is done. We believe that the district court's interpretation of the plan provision at issue was correct, and we believe that its decision should be affirmed on appeal. Do Your Honors have any additional questions? It appears not. Thank you. Thank you. Your Honors, I have reserved over four minutes of time in rebuttal, but I can be very straightforward in my own closing comment unless you have additional questions. This case is before the court on cross motions for summary judgment. The plan's motion was denied. The plaintiff, Francine's motion was granted. And our request is not just the remand and reversal, but also granting a summary judgment in favor of the plan's determination as to the intent of the plan and the interpretation. Thank you. We thank both counsel for your argument. The case just argued is submitted for decision. That concludes the calendar for today, and we're adjourned.
judges: Brunetti, Clifton, Archer